1 | SAFARIAN & BAROIAN, LLP
  | Harry A. Safarian (SBN 204106)
2 | Alex A. Baroian (SBN 266021)
  | 109 E. Harvard Street, Suite 300
3 | Glendale, California 91205
  | Tel.: (818) 334-8528
4 | Fax: (818) 334-8107

5 | Email: hs@thesbfirm.com; ab@thesbfirm.com

6 | Attorneys for Plaintiff, MARK OBENSTINE, an individual

7

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 |

11 | MARK OBENSTINE, an individual,

| | **SACV13-1291**DSF(JCbx) |
| --- | --- |
| | **COMPLAINT FOR:** |

12 | Plaintiff,

13 | v.

14 | REZA JAFARY, an individual;
   | CRESTRIDGE PARTNERS, INC., a
15 | California Corporation; JAMES
   | ESTAKHRIAN, an individual;
16 | SHAHRAM RON ALIKANI, an
   | individual; AMIR BRAD MOKRI, an
17 | individual; IRVINE LAW GROUP,
   | LLP, a California Limited Liability
18 | Partnership; RAYMOND C. FAY, an
   | individual; STEVEN M. SKALET, an
19 | individual; KARLA GILLBRIDE, an
   | individual; MEHRI & SKALET,
20 | PLLC, a professional limited liability
   | company; and DOES 1 -100,
21 | inclusive,

22 | Defendants.

**1. VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT, 28 U.S.C. §§ 2810 ET SEQ.**

**2. VIOLATION OF CALIFORNIA PENAL CODE § 502**

**3. VIOLATION OF PRIVACY RIGHTS**

**4. VIOLATION OF CALIFORNIA PENAL CODE § 631**

**5. VIOLATION OF CALIFORNIA PENAL CODE § 632**

**6. VIOLATION OF CALIFORNIA PENAL CODE § 632.5**

**7. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**8. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**9. VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT ("RICO"), 18 U.S.C. § 1961 et seq.**

23
24
25
26
27
28

1

**10. VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200**

**11. BREACH OF FIDUCIARY DUTY**

**12. FRAUD**

**13. NEGLIGENT MISREPRESENTATION**

**14. NEGLIGENCE**

Plaintiff MARK OBENSTINE ("OBENSTINE" or "PLAINTIFF"), alleges against Defendants, and each of them, as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this matter because:

a.  <u>Federal Question</u>: This is a civil action for violation of 18 U.S.C. § 1961 et seq. and the Electronic Communications Privacy Act (28 U.S.C. § 2810 et seq.). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

b.  <u>Diversity</u>: The Court also has jurisdiction pursuant to 28 U.S.C § 1332, as the amount in controversy exceeds $75,000, and there is complete diversity between Plaintiff and Defendants. Plaintiff is a domiciliary of the State of Nevada. Defendants are (a) individuals who reside in the States of California and, on information and belief, Washington D.C. and neighboring states, and (b) business entities that have their principal places of business, and exist by virtue of the laws of, the State of California and Washington D.C.

2.  The Court has general jurisdiction over Defendants REZA JAFARY, JAMES ESTAKHRIAN, AMIR BRAD MOKRI, and SHAHRAM RON ALIKANI, each of which is an individual with his domicile in the State of California. The Court has general jurisdiction over CRESTRIDGE PARTNERS, INC. ("CRESTRIDGE"), a California corporation with its principal place of business in the State of

2

1   California, and over THE IRVINE LAW GROUP, LLP, a California Limited

2   Partnership with its principal place of business in California.

3       3.      This court has specific limited jurisdiction over Defendants MEHRI &

4   SKALET, PLLC ("M&S"), RAYMOND C. FAY, STEVEN SKALET, and

5   KARLA GILLBRIDE, as these defendants have purposefully availed themselves to

6   the benefits and protections of the State of California by doing those acts described

7   herein and knowingly transacting affairs forming the basis of the claims in this

8   District as more particularly set forth in this complaint.

9       4.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because

10  Defendants' conduct giving rise to OBENSTINE's claims occurred in, and were

11  ~~directed to, this District, and because Defendants ALIKANI, JAFARY, MOKRI,~~

12  IRVINE LAW GROUP, LLP and CRESTRIDGE PARTNERS, INC. are

13  individuals or businesses that reside in, or have their principal places of business in,

14  this District. Venue is also proper pursuant to 18 U.S.C. § 1965(a) because

15  Defendants have transacted affairs in this District.

16

17                          **THE PARTIES**

18      5.      PLAINTIFF MARK OBENSTINE is an individual who is, and at all

19  times relevant to this action was, a resident of the State of Nevada.

20      6.      Defendants are:

21          a.      REZA JAFARY, JAMES ESTAKHRIAN, AMIR BRAD

22  MOKRI, and SHAHRAM RON ALIKANI, individuals domiciled in the County of

23  Orange, State of California.

24          b.      CRESTRIDGE PARTNERS, INC., a California Corporation

25  with its principal place of business in the County of Orange, State of California.

26          c.      IRVINE LAW GROUP, LLP, a California Limited Liability

27  Partnership with its principal place of business in the County of Orange, State of

28  California.

COMPLAINT

d.    STEVEN M. SKALET, RAYMOND C. FAY and KARLA GILLBRIDE, individuals believed to have their domiciles in Washington, D.C. or immediately neighboring states;

e.    M&S a professional limited liability company organized and existing under the laws of Washington, D.C., and having its principal place of business in Washington, D.C.

f.    The true names and/or capacities, whether individual, corporate, associate or otherwise, of defendant DOES 1 through 100, inclusive, are unknown to PLAINTIFF. Accordingly, PLAINTIFF sues such unknown defendants by fictitious names. PLAINTIFF is informed and believes, and thereupon alleges, each fictitiously named defendant is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and that the acts and omissions of said defendants were a legal cause of PLAINTIFF'S damages. PLAINTIFF will amend this Complaint to assert the true names and/or capacities of such fictitiously named defendants when the same have been ascertained.

7.    PLAINTIFF is informed and believes and thereupon alleges that, at all times mentioned herein, defendants were the agents, servants, employees, successors-in-interest and/or joint venturers of their co-defendants and were, as such, acting within the purpose, course, scope and authority of said agency, employment, successor-in-interest and/or joint venture, and that each and every defendant as aforesaid was acting as a principal and was negligent in the selection and hiring and retention of each and every defendant as an agent, employee, successor-in-interest and/or joint venturer.

## **NATURE OF ACTION**

8.    Plaintiff MARK OBENSTINE brings this action for injunctive relief and damages caused by Defendants' unlawful interception, copying, transmission

4

and duplication, of electronic communications in violation of OBENSTINE's privacy rights under the California Constitution and common law, state and federal electronic privacy laws as more particularly stated herein, California Unfair Competition Law (Business & Professions Code § 17200), and related claims.

9. Unbeknownst to OBENSTINE, an attorney in good standing and licensed to practice law in the State of California since January 7, 2000, Defendants, and each of them, colluded to infiltrate, and did infiltrate, OBENSTINE's private email account, mark@crestpar.com ("Account"). OBENSTINE, an attorney, used the Account predominantly to communicate with clients who retained him to handle legal matters, as well as his co-counsel on such matters. The Account was also used to communicate with family, friends, and financial advisors, and included the transmission of private financial statements, including tax returns. In so invading OBENSTINE's email account, Defendants pilfered through and analyzed thousands of private work product and attorney-client emails, and accessed private personal and financial information concerning OBENSTINE, including his social security number. Defendants, doing these acts, acted surreptitiously, violating numerous laws and committing numerous state and federal crimes in the process. Defendants did these acts all without the consent or knowledge of OBENSTINE.

## INTRODUCTION

10. OBENSTINE and four others co-founded CRESTRIDGE, a commercial real estate finance and advisement company. OBENSTINE invested, among other assets, money in forming the partnership and setting up its e-mail system. With the decline of the Southern California real estate market, OBENSTINE took an extended sabbatical from the partnership to pursue a litigation practice. He continued using the Account for sending and receiving private, password-protected e-mails. A clear demarcation was established between OBENSTINE and

1   CRESTRIDGE: The Account would be used strictly for OBENSTINE's litigation
2   work. The Account would be password-protected, and strictly confidential.

3       11.    In 2009, OBENSTINE was retained to represent individuals who paid
4   earnest money security deposits towards the purchase of condominium units in the
5   Cosmopolitan Resort & Casino in Las Vegas, Nevada. OBENSTINE, along with his
6   co-counsel, filed two class action lawsuits in an effort to recover clients' earnest
7   money deposits. The consolidated case, *Watt v. Nevada Property*, Clark County
8   District Court Case No. A582541 ("Cosmopolitan Class Action"), reached a
9   settlement in late-2009. OBENSTINE received a portion of the settlement as
10   attorneys' fees in early-2010.

11       12.    In 2010, OBENSTINE stopped using the Account. Before doing so, he
12   obtained a commitment from CRESTRIDGE's president, JAFARY, that the e-mails
13   would all be purged from CRESTRIDGE's server to protect their sanctity. Indeed,
14   prior to making this commitment, JAFARY had complained that OBENSTINE's
15   voluminous emails were occupying too much of CRESTRIDGE's server capacity,
16   and needed to be purged.

17       13.    Following conclusion of the settlement, JAFARY demanded a "cut" of
18   OBENSTINE's attorneys' fees. The demand violated California law prohibiting
19   attorneys from sharing attorneys' fees with non-attorneys. JAFARY also demanded,
20   illegally, that OBENSTINE waive all of ESTAKHRIAN's attorney fees in relation
21   to the Cosmopolitan litigation, or pay ESTAKHRIAN money in an amount
22   equivalent to his attorney fees. JAFARY also told OBENSTINE his position as a
23   partner of CRESTRIDGE obligated him to share earnings from the settlement with
24   CRESTRIDGE. OBENSTINE refused JAFARY's demands. At the time, JAFARY
25   and CRESTRIDGE were struggling financially, and were embittered by
26   OBENSTINE's refusal to share fees. JAFARY was also angry at OBENSTINE's
27   refusal to give ESTAKHRIAN, who is a close relative or friend of JAFARY, back
28   his attorneys' fees.

14.     In retaliation against OBENSTINE, JAFARY, acting for himself and CRESTRIDGE, infiltrated OBENSTINE's private Account (the same one JAFARY committed to purging previously). At the time, OBENSTINE was under the impression JAFARY and CRESTRIDGE had purged all of the emails based on JAFARY's insistence this would be, and needed to be, done. JAFARY secretly shared the contents of the Account with CRESTRIDGE attorney, MOKRI. MOKRI, a close friend and law school classmate of ALIKANI, the principal of defendant THE IRVINE LAW GROUP, colluded together to comb through the emails. JAFARY and CRESTRIDGE facilitated, and assisted with, this process, and also analyzed the emails.

15.     In the decade preceding Defendant's hacking of attorney OBENSTINE's Account, ALIKANI and his firm, THE IRVINE LAW GROUP, had worked closely together with M&S and its attorneys (including filing *Melissa Ecker v. Ford Motor Co.*, Los Angeles Superior Court Case No. BC278074, filed July 23, 2002). On information and belief, ALIKANI is a relative of CYRUS MEHRI, a founding member of M&S. After obtaining access to OBENSTINE's voluminous emails with the assistance of JAFARY, CRESTRIDGE, and MOKRI, and aware OBENSTINE received substantial fees in connection with settlement of the Cosmopolitan litigation, ALIKANI shared the contents of OBENSTINE's private email account with the M&S defendants. Defendants' plan was to use the ill-gotten electronic information from the hacked Account, manipulate its contents, and use the manipulated information to extort money from OBENSTINE.

16.     After invading OBENSTINE's private email account, Defendants combed through each and every email. After doing so, Defendants enlisted ESTAKHRIAN, a close friend or relative of JAFARY, to serve as class representative in a meritless class action lawsuit against OBENSTINE and other attorneys he had worked with on the Cosmopolitan and other litigation matters. Defendants, and each of them, carefully analyzed the protected and confidential

7

attorney-client and work product exchanges between OBENSTINE and his clients and attorneys he had worked with. Defendants' manipulation of the content Account included eliminating emails that would undermine ESTAKHRIAN's claims in the Class Action. For instance, a critical issue in the Class Action is whether OBENSTINE is subject to the Court's jurisdiction. ESTAKHRIAN falsely represented to the Court in the District Court action that he became a party to the Class Action after being "cold called" by OBENSTINE's assistant. Missing from the CRESTRIDGE Production were a collection of emails from February 2009 confirming (a) the close relationship between JAFARY and ESTAKHRIAN, (b) the fact JAFARY initially referred ESTAKHRIAN to OBENSTINE to become a class member relative to the Cosmopolitan class action, and (c) OBENSTINE's assistant did not "cold call" potential clients, and did not solicit ESTAKHRIAN as a client.

17.     In an attempt to launder the hijacked email account for use against OBENSTINE, ESTAKHRIAN, acting by and through M&S, THE IRVINE LAW GROUP, SKALET, FAY, GILLBRIDE and ALIKANI, served on CRESTRIDGE a subpoena in the context of the meritless lawsuit they filed against OBENSTINE under the guise of "jurisdictional discovery." The December 8, 2011 subpoena was calculated to include absolutely privileged, private communications. It sought every e-mail attorney OBENSTINE sent or received regarding the Cosmopolitan litigation:

> All e-mails to or from Mark Obenstine at the e-mail address mark@crestpar.com concerning, referring or relating to the legal dispute regarding earnest money deposits for the purchase of condominium units in a development known as the Cosmopolitan Resort and Casino Law Vegas ("Cosmopolitan"), in Las Vegas, Nevada.

18.     On its face, the subpoena demanded *all* e-mails concerning the Cosmopolitan, regardless of their privileged and confidential nature. Thus, ***within hours*** of receiving the subpoena, and in order to determine whether a protective

1   order might be necessary, OBENSTINE's counsel left a voicemail message for

2   JAFARY, inquiring whether the e-mails still existed. At the time, OBENSTINE

3   was unaware (a) Defendants were all closely associated by blood, marriage,

4   friendship, or prior professional endeavors, (b) that JAFARY had already

5   orchestrated a raid of the Account, and that Defendants had already reviewed the

6   Account's contents, and analyzed voluminous private attorney-client and attorney

7   work product exchanges, as well as private emails, many including financial

8   information and personal exchanges between OBENSTINE and his family, friends,

9   advisors, and attorneys, or (c) that the contents of the Account had been

10  manipulated.

11         19.    On December 9, 2011—one day after service of the subpoena—

12  OBENSTINE's counsel reached JAFARY on his cell phone and advised the

13  subpoena sought privileged materials, and that a motion for protective order would

14  be filed before the subpoena's December 23, 2011 production date if the

15  communications had not already been purged. JAFARY refused to discuss the e-

16  mails or subpoena. Instead, he merely responded, "talk to my attorney."

17         20.    On December 14, 2011, MOKRI advised that CRESTRIDGE had

18  *already* transferred the protected e-mails over OBENSTINE's objection. MOKRI

19  confirmed the transfer was "voluminous." OBENSTINE demanded CRESTRIDGE

20  provide copies of the produced e-mails, and the electronic transmissions between

21  Plaintiff's attorneys and CRESTRIDGE in order to identify when the transfer(s)

22  took place (and further verify the subpoena was issued to launder e-mails

23  Defendants already obtained). CRESTRIDGE refused.

24         21.    On December 14, 2011, OBENSTINE, through legal counsel, sent the

25  first of multiple letters to Defendants, requesting "any documents received from

26  CRESTRIDGE be turned over to us immediately, and that we have an opportunity

27  to seek a protective order. . ." Defendants refused to return or destroy the

28  voluminous attorney-client, work product and private e-mails, and conceded having

9

reviewed all the e-mails which, on their face, evidence their privileged nature: "[B]ased on our preliminary review of the documents produced so far, the vast majority of documents are clearly relevant and discoverable. . ."

22. The timeline of events leading up to the referenced December 14, 2011 email confirms Defendants illegally obtained and analyzed manifestly protected communications in violation of privacy rights, the attorney-client privilege, the attorney work product doctrine, and numerous statutes criminalizing these actions:

a. On December 8, 2011—within hours of issuance of the subpoena, OBENSTINE's counsel left a voice message for JAFARY inquiring whether the e-mails still existed.

b. On December 9, 2011—less than 24 hours after service of the CRESTRIDGE subpoena, OBENSTINE's counsel informed JAFARY the voluminous of e-mail communications were privileged and confidential, and an order from the Court protecting them would be obtained.

c. Although the subpoena called for production on December 23, 2011, on December 14, 2011, MOKRI admitted to OBENSTINE's counsel the e-mails had already been downloaded from CRESTRIDGE's server and transmitted to ESTAKHRIAN and his attorneys.

d. On December 15, 20110—eight days before the subpoena's production date—the M&S defendants, through defendant SKALET, confirmed having reviewed the e-mails, which consist of

10

1  an extraordinarily large volume of documents, and concluded the

2  *"vast majority"* were *"clearly relevant and discoverable."*

3

4      23.    SKALET, an attorney with over 40 years of experience, knew the

5  professional rules strictly forbade his firm's analysis of the emails, the vast majority

6  of which were protected by the attorney-client privilege and attorney work product

7  doctrine. Defendants' actions were also forbidden by state and federal law. In doing

8  those acts described herein, Defendants, and each of them committed countless

9  felonies as more particularly described herein. Defendants did those acts described

10  herein in order to take financial advantage of OBENSTINE, to extort money from

11  him, and to exact revenge for OBENSTINE's refusal to split fees with JAFARY or

12  ESTAKHRIAN. Defendants acted willfully, oppressively, maliciously, illegally, and

13  despicably.

14

15  **FIRST CAUSE OF ACTION**

16  **(VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT, 28**

17  **U.S.C, §§ 2810 ET SEQ. AGAINST ALL DEFENDANTS)**

18      27.    PLAINTIFF hereby incorporates by reference, as though set forth in

19  full, each and all of the allegations set forth previously herein.

20      28.    DEFENDANTS, and each of them, by doing those acts described

21  herein, violated The Electronic Communications Privacy Act and Stored Wire

22  Electronic Communications Privacy Act of 1986 (collectively, "ECPA"), codified at

23  28 U.S.C. §§ 2810 et seq.  The ECPA protects communications including, but not

24  limited to, wire and electronic communications while those communications are

25  being made, in transit, and when stored.

26      29.    Title I of the ECPA, commonly known as the Wiretap Act, prohibits,

27  among other things, interception, use, disclosure, or procurement of any person to

28

COMPLAINT

intercept any wire, oral, or electronic communication. Title I also prohibits the use of illegally obtained communications as evidence.

30.     Pursuant to the ECPA's express terms, OBENSTINE is entitled to recover actual damages, punitive damages, attorneys' fees and statutory damages as set forth in the ECPA, including, but not limited to, damages codified at 18 U.S.C. 2520.

31.     The ECPA also entitles OBENSTINE to equitable relief necessary to prevent future harm to OBENSTINE. As such, OBENSTINE is entitled to, and prays for, an order compelling (a) full disclosure by Defendants of all electronic communications accessed, (b) an order granting OBENSTINE the right to have forensic computer experts, paid for by Defendants but selected by OBENSTINE, to analyze all computer hardware, including servers, at CRESTRIDGE, M&S, THE IRVINE LAW GROUP, and any other computers and/or servers Defendants have had access to so that any trace of the emails Defendants illegally commandeered from OBENSTINE can be eliminated, and to be able to determine the full nature and extent of Defendants' infiltration of OBENSTINE's account, (c) a declaration from the Court that any emails obtained by Defendants can be used for no purposes by Defendants and their agents, and that all such emails must be returned forthwith to OBENSTINE.

## SECOND CAUSE OF ACTION

## (VIOLATION OF CALIFORNIA PENAL CODE § 502 AGAINST ALL DEFENDANTS)

32.     PLAINTIFF hereby incorporates by reference, as though set forth in full, each and all of the allegations set forth previously herein.

33.     Defendants, and each of them, by doing those acts described herein, violated California's Comprehensive Computer Data Access and Fraud Act, which

provides, in relevant part, "any person who commits any of the following acts is guilty of a public offense":

> (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

> (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

> \* \* \*

> (4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.

> \* \* \*

> (6) Knowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section.

> (7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

> \* \* \*

34.    OBENSTINE seeks those damages set forth in California Penal Code section 502 against Defendants including, but not limited to, his actual monetary damages, civil penalties as set forth in Section 502, his costs of investigating, punitive damages, and attorneys' fees.

35.    OBENSTINE is also entitled to recover, and hereby requests, equitable relief necessary to prevent future harm to OBENSTINE. As such, OBENSTINE is entitled to, and prays for, an order compelling (a) full disclosure by Defendants of all electronic communications accessed, (b) an order granting OBENSTINE the right to have forensic computer experts, paid for by Defendants but selected by OBENSTINE, to analyze all computer hardware, including servers, at CRESTRIDGE, M&S, THE IRVINE LAW GROUP, and any other computers and/or servers Defendants have had access to so that any trace of the emails Defendants illegally commandeered from OBENSTINE can be eliminated, and to be able to determine the full nature and extent of Defendants' infiltration of OBENSTINE's account, (c) a declaration from the Court that any emails obtained by Defendants can be used for no purposes by Defendants and their agents, and that all such emails must be returned forthwith to OBENSTINE.

## THIRD CAUSE OF ACTION

### (VIOLATION OF PRIVACY RIGHTS AGAINST ALL DEFENDANTS)

36.    PLAINTIFF hereby incorporates by reference, as though set forth in full, each and all of the allegations set forth previously herein.

37.    Article I, Section I, of the California Constitution includes an express right of privacy among the "inalienable rights of the people." The common law right of privacy prohibits the invasion of one's seclusion or solitude.

38.    DEFENDANTS, by the actions described herein, violated OBENSTINE's privacy rights. Defendants intentionally intruded upon

14

1  OBENSTINE's solitude and seclusion, and invaded his private affairs. The

2  California Supreme Court instructs that the tort of intrusion is not limited to physical

3  invasions, but also lies where the defendants "obtained unwanted access to data"

4  concerning the plaintiff.

5    39.    OBENSTINE had reasonable expectations that his personal

6  identification information—including his social security number—his private

7  financial information—including tax returns and financial statements—and

8  communications with his family, friends, clients and co-counsel, would remain

9  private. OBENSTINE had no knowledge his private, password protected, email

10 account would be hacked by Defendants for purposes of financial gain.

11    40.    The manner in which Defendants, and each of them, intruded upon

12 OBENSTINE's privacy rights is highly offensive to a reasonable person.

13    41.    As a proximate result of the above acts, OBENSTINE suffered

14 humiliation, emotional distress, mental anguish, and physical distress. And,

15 OBENSTINE's reputation as an attorney suffered serious harm, damaging his ability

16 to gain clients as an attorney and earn a living.

17    42.    Unless and until enjoined, and restrained by order of this Court,

18 Defendant's wrongful conduct will continue to cause OBENSTINE great and

19 irreparable injury in that his private personal information will remain at risk.

20 Defendants will have the ability to use, and will continue to use, unlawfully obtained

21 information for their own purposes and profit, and may sell and/or disclose to others,

22 private information of OBENSTINE, exposing him to identity theft and fraud.

23 OBENSTINE has no adequate remedy at law for the injuries in that a judgment for

24 the monetary damages will not end this unlawful intrusion.

25    43.    OBENSTINE is also entitled to recover, and hereby requests, equitable

26 relief necessary to prevent future harm to OBENSTINE. As such, OBENSTINE is

27 entitled to, and prays for, an order compelling (a) full disclosure by Defendants of

28 all electronic communications accessed, (b) an order granting OBENSTINE the

1  right to have forensic computer experts, paid for by Defendants but selected by

2  OBENSTINE, to analyze all computer hardware, including servers, at

3  CRESTRIDGE, M&S, THE IRVINE LAW GROUP, and any other computers

4  and/or servers Defendants have had access to so that any trace of the emails

5  Defendants illegally commandeered from OBENSTINE can be eliminated, and to be

6  able to determine the full nature and extent of Defendants' infiltration of

7  OBENSTINE's account, (c) a declaration from the Court that any emails obtained

8  by Defendants can be used for no purposes by Defendants and their agents, and that

9  all such emails must be returned forthwith to OBENSTINE.

10     44.    Defendants' actions described herein were illegal, malicious, willful,

11  oppressive, fraudulent and despicable. Defendants, and each of them, were

12  experienced attorneys and/or real estate professionals. Defendants conspired together

13  to commit the felonies and violations described herein in an effort extort money

14  from OBENSTINE. At all times relevant, Defendants knew the electronic

15  information they commandeered did not belong to them, was confidential, and that

16  their actions were in violation of applicable laws and the rights of OBENSTINE and

17  clients, attorneys, financial advisors, family and friends OBENSTINE exchanged

18  thousands of emails with. As such, OBENSTINE is entitled to recover punitive

19  damages.

20     45.    OBENSTINE is entitled to these remedies, and to attorneys' fees

21  pursuant to California Code of Civil Procedure, section 1021.5.

22

23              **FOURTH CAUSE OF ACTION**

24       **(VIOLATION OF CALIFORNIA PENAL CODE SECTION 631**

25              **AGAINST ALL DEFENDANTS)**

26     46.    PLAINTIFF hereby incorporates by reference, as though set forth in

27  full, each and all of the allegations set forth previously herein.

28

47.   Defendants, and each of them, by doing those acts described herein, violated California Penal Code, section 631, which provides, in relevant part:

> (a) Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison, or by both a fine and imprisonment in the county jail or in the state prison. If the person has previously been convicted of a violation of this section or Section 632, 632.5, 632.6, 632.7, or 636, he or she is punishable by a fine not

1    exceeding   ten   thousand   dollars   ($10,000),   or   by

2    imprisonment in the county jail not exceeding one year, or

3    by imprisonment in the state prison, or by both a fine and

4    imprisonment in the county jail or in the state prison.

5

6    48.    Pursuant to California Penal Code, section 637.2, OBENSTINE is

7    entitled to recover, and seeks the following relief:

8        a.   $5,000 per electronic communication at issue, or three times the

9             amount of actual damages sustained, whichever is greater;

10       b.   An order enjoining Defendants, and each of them, from using any of

11            the emails at issue, and an order that Defendants return all originals and

12            copies, digital or otherwise, to OBENSTINE;

13       c.   Any other relief that may be authorized by law.

14

15

16   49.    Defendants' actions described herein were illegal, malicious, willful,

17   oppressive, fraudulent and despicable. Defendants, and each of them, were

18   experienced attorneys and/or real estate professionals. Defendants conspired together

19   to commit the felonies and violations described herein in an effort extort money

20   from OBENSTINE. At all times relevant, Defendants knew the electronic

21   information they commandeered did not belong to them, was confidential, and that

22   their actions were in violation of applicable laws and the rights of OBENSTINE and

23   clients, attorneys, financial advisors, family and friends OBENSTINE exchanged

24   thousands of emails with. As such, OBENSTINE is entitled to recover punitive

25   damages.

26   50.    OBENSTINE is entitled to these remedies, and to attorneys' fees

27   pursuant to California Code of Civil Procedure, section 1021.5.

28

18

## FIFTH CAUSE OF ACTION

## (VIOLATION OF CALIFORNIA PENAL CODE SECTION 632 AGAINST ALL DEFENDANTS)

51.     PLAINTIFF hereby incorporates by reference, as though set forth in full, each and all of the allegations set forth previously herein.

52.     Defendants, and each of them, by doing those acts described herein, violated California Penal Code, section 632, which provides, in relevant part:

> (a) Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment. If the person has previously been convicted of a violation of this section or Section 631, 632.5, 632.6, 632.7, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000), by imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

> (b) The term "person" includes an individual, business association, partnership, corporation, limited liability company, or other legal entity, and an individual acting or

COMPLAINT

purporting to act for or on behalf of any government or subdivision thereof, whether federal, state, or local, but excludes an individual known by all parties to a confidential communication to be overhearing or recording the communication.

(c) The term "confidential communication" includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

53.   California Penal Code Section 637.2 permits a civil action for violation of Section 632, authorizing an award of $5,000 for each violation as well as injunctive relief. Plaintiff is entitled to these remedies, and to attorneys' fees pursuant to California Code of Civil Procedure, section 1021.5.

54.   Defendants' actions described herein were illegal, malicious, willful, oppressive, fraudulent and despicable. Defendants, and each of them, were experienced attorneys and/or real estate professionals. Defendants conspired together to commit the felonies and violations described herein in an effort extort money from OBENSTINE. At all times relevant, Defendants knew the electronic information they commandeered did not belong to them, was confidential, and that their actions were in violation of applicable laws and the rights of OBENSTINE and clients, attorneys, financial advisors, family and friends OBENSTINE exchanged

thousands of emails with. As such, OBENSTINE is entitled to recover punitive damages.

55.     As a direct result of Defendants' conduct, Plaintiff has sustained, and will continue to sustain, injury. OBENSTINE is entitled to statutory damages and injunctive relief to be determined at trial.

## SIXTH CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA PENAL CODE SECTION 632.5 AGAINST ALL DEFENDANTS)

56.     PLAINTIFF hereby incorporates by reference, as though set forth in full, each and all of the allegations set forth previously herein.

57.     Defendants, and each of them, by doing those acts described herein, violated California Penal Code, section 632.5, which provides, in relevant part:

> Every person who, maliciously and without the consent of all parties to the communication, intercepts, receives, or assists in intercepting or receiving a communication transmitted between cellular radio telephones or between any cellular radio telephone and a landline telephone shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), by imprisonment in the county jail not exceeding one year or in the state prison, or by both that fine and imprisonment. If the person has been previously convicted of a violation of this section or Section 631, 632, 632.6, 632.7, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000), by imprisonment in the county jail not exceeding one year or in the state prison, or by both that fine and imprisonment.

* * *

(c) As used in this section and Section 635, "cellular radio telephone" means a wireless telephone authorized by the Federal Communications Commission to operate in the frequency bandwidth reserved for cellular radio telephones.

58.   At a minimum, hundreds of the hacked electronic communications of the Account were sent between and among parties using handheld cellular phones.

59.   Defendants' actions described herein were illegal, malicious, willful, oppressive, fraudulent and despicable. Defendants, and each of them, were experienced attorneys and/or real estate professionals. Defendants conspired together to commit the felonies and violations described herein in an effort extort money from OBENSTINE. At all times relevant, Defendants knew the electronic information they commandeered did not belong to them, was confidential, and that their actions were in violation of applicable laws and the rights of OBENSTINE and clients, attorneys, financial advisors, family and friends OBENSTINE exchanged thousands of emails with. As such, OBENSTINE is entitled to recover punitive damages.

60.   California Penal Code Section 637.2 permits a civil action for violation of Section 632.6, authorizing an award of $5,000 for each violation as well as injunctive relief. OBENSTINE is entitled to these remedies, and to attorneys' fees pursuant to California Code of Civil Procedure, section 1021.5.

## SEVENTH CAUSE OF ACTION
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS)

61.   OBENSTINE hereby incorporates by reference, as though set forth in full, each and all of the allegations set forth previously herein.

62.   Defendants, and each of them, acted in an extreme and outrageous manner in doing those acts described herein. Defendants knew OBENSTINE was an attorney, and that OBENSTINE took pains to protect client confidences, and his own privacy. Defendants also knew the communications they hacked were protected by various privileges, including the attorney-client communication privilege, the attorney work product doctrine, and privacy rights.

63.   Defendants JAFARY and ESTAKHRIAN did those acts described herein in retaliation against OBENSTINE for his refusal to share legal fees with them, or refund ESTAKHRIAN attorneys' fees in connection with the Cosmopolitan litigation.

64.   Defendants did the acts described herein intentionally and maliciously, and with reckless disregard of the probability of causing OBENSTINE to suffer emotional distress by experiencing humiliation, mental anguish, and emotional and physical distress.

65.   As a proximate results of the acts described herein, OBENSTINE did suffer, and continues to suffer severe emotional distress, humiliation, mental anguish, emotional, and physical distress. OBENSTINE has sustained severe damage in an amount to be proven at trial.

66.   Defendants' actions described herein were illegal, malicious, willful, oppressive, fraudulent and despicable. Defendants, and each of them, were experienced attorneys and/or real estate professionals. Defendants conspired together to commit the felonies and violations described herein in an effort extort money from OBENSTINE. At all times relevant, Defendants knew the electronic information they commandeered did not belong to them, was confidential, and that their actions were in violation of applicable laws and the rights of OBENSTINE and clients, attorneys, financial advisors, family and friends OBENSTINE exchanged thousands of emails with. As such, OBENSTINE is entitled to recover punitive damages.

## EIGHTH CAUSE OF ACTION

### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### AGAINST ALL DEFENDANTS)

67.     OBENSTINE hereby incorporates by reference, as though set forth in full, each and all of the allegations set forth previously herein.

68.     In doing those acts described herein, Defendants knew, or should have known, their actions would cause OBENSTINE to suffer severe emotional distress.

69.     As a proximate results of the acts described herein, OBENSTINE did suffer, and continues to suffer severe emotional distress, humiliation, mental anguish, emotional, and physical distress. OBENSTINE has sustained severe damage in an amount to be proven at trial.

## NINTH CAUSE OF ACTION

### (VIOLATION OF RICO, 18 U.S.C. § 1961 ET SEQ.

### AGAINST ALL DEFENDANTS)

70.     PLAINTIFF incorporates by reference, as though set forth in full, each and all of the allegations set forth previously herein.

71.     Defendants engaged in a pattern of racketeering activity pursuant to 18 U.S.C. § 1961 et seq. by repeatedly conspiring to violate 18 U.S.C. § 1343 in using the U.S. mail and internet lines to execute their scheme to defraud.

72.     Defendants, and each of them, acted in an extreme and outrageous manner in doing those acts described herein. Defendants knew OBENSTINE was an attorney, and that OBENSTINE took pains to protect client confidence and his own privacy. Defendants also knew the communications they hacked were protected by various privileges, including the attorney-client communication privilege, the attorney work product doctrine, and privacy rights. Defendants were also aware their actions violated the state and federal statutes described herein and, as such,

24

1   Defendants knowingly undertook a criminal conspiracy by doing those acts
2   complained of herein.

3       73.   Defendants' actions described herein were illegal, malicious, willful,
4   oppressive, fraudulent and despicable. Defendants, and each of them, were
5   experienced attorneys and real estate professionals. Defendants conspired together to
6   commit the felonies and violations described herein in an effort extort money from
7   OBENSTINE. At all times relevant, Defendants knew the electronic information
8   they commandeered did not belong to them, was confidential, and that their actions
9   were in violation of applicable laws and the rights of OBENSTINE and clients,
10  attorneys, financial advisors, family and friends OBENSTINE exchanged thousands
11  of emails with. As such, OBENSTINE is entitled to recover punitive damages.

12      74.   A wire fraud violation consists of (1) the formation of a scheme or
13  artifice to defraud (2) use of the United States wires or causing a use of the United
14  States wires in furtherance of the scheme; and (3) specific intent to deceive or
15  defraud. *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.,* 806 F.2d 1393,
16  1400 (9th Cir. 1986).

17      75.   Defendants created a fraudulent scheme to deceive PLAINTIFFS. In
18  furtherance of the fraudulent scheme, Defendants transmitted thousands of private
19  emails from OBENSTINE's password protected Account. The emails included
20  thousands of attorney-client communications, attorney work product exchanges
21  between OBENSTINE and co-counsel, personal exchanges between OBENSTINE's
22  family and friends, as well as extensive confidential financial information, such as
23  tax returns, financial statements, and other documents containing OBENSTINE's
24  social security number.

25      76.   The actions of Defendants, and each of them, were willful, malicious,
26  despicable, and fraudulent.

27      77.   In furtherance of their scheme to infiltrate OBENSTINE's account,
28  Defendants engaged in countless occasions of using the United States mail and the

1  Internet to transmit ill-gotten electronic exchanges from the Account as described
2  herein.

3         78.     As a direct and proximate result of the foregoing, OBENSTINE has
4  suffered damages including, but not limited to, humiliation, emotional distress,
5  mental anguish, and physical distress. And, OBENSTINE's reputation as an attorney
6  suffered serious harm, damaging his ability to gain clients as an attorney and earn a
7  living.

8         79.     Defendants' actions were knowing, intentional, deliberate, and
9  malicious, and said actions proximately and directly caused OBENSTINE's
10  damages.

11        ~~80.~~   ~~The intentional, callous, willful, wanton and oppressive acts of~~
12  Defendants, as set forth herein, are sufficient to warrant the imposition of treble and
13  punitive damages against Defendants. In addition, in light of the statutory violations
14  described herein OBENSTINE is entitled by law to recovery his attorneys' fees.

15

16  ### TENTH CAUSE OF ACTION

17  ### (VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE
18  ### SECTION 17200 AGAINST ALL DEFENDANTS)

19        81.     PLAINTIFF hereby incorporates by reference, as though set forth in
20  full, each and all of the allegations set forth previously herein.

21        82.     California Business and Professions Code section 17200 prohibits
22  unlawful, unfair, or fraudulent business practices or acts. Defendants coordinated
23  the hacking of OBENSTINE's email Account, including unlawfully and secretly
24  accessing thousands of password protected, private emails, and analyzing them one
25  by one. Each email reviewed was a separate, independent, statutory violation
26  entitling OBENSTINE to statutory damages as described herein. Each email
27  Defendants accessed and reviewed was also a separate, independent, criminal act.

28

26

83. Defendants' acts effected the public as a whole, in that the emails accessed included those of thousands of unwitting clients of OBENSTINE who never consented to the hacking of their private attorney-client communications, as well as family, friends, and business contacts of OBENSTINE. In all, Defendants are believed to have accessed tens of thousands of confidential emails in the password protected Account. The actions of Defendants will require a massive undertaking to notify all persons who had their private communications illegally and surreptitiously hijacked, and to take appropriate measures to prevent the misappropriation of such persons' confidential information, such as social security numbers, that could be used to commit fraud, such as identity theft.

84. Defendants' actions described herein have caused direct harm to OBENSTINE as stated herein including, but not limited to, statutory damages, emotional and physical distress, loss of earnings, lost earning capacity, legal and expert fees. OBENSTINE's damages exceed $100 million. OBENSTINE is also entitled to the recovery of attorneys' fees and punitive damages.

## ELEVENTH CAUSE OF ACTION

### (BREACH OF FIDUCIARY DUTY AGAINST REZA JAFARY AND DOES 1 TO 10)

85. PLAINTIFF hereby incorporates by reference, as though set forth in full, each and all of the allegations set forth previously herein.

86. By virtue of his relationship as OBENSTINE's partner, JAFARY owed OBENSTINE a fiduciary duty in preserving his confidences. The fiduciary duty imposed on JAFARY the duty of highest good faith and fair dealing.

87. By (a) committing to OBENSTINE that his emails would be maintained in the strictest of confidence, (b) causing OBENSTINE to believe his emails had all been purged, or would be purged imminently, and (c) orchestrating the infiltration and "hacking" into of OBENSTINE's private, password protected

27

1  emails numbering in the tens of thousands, in an attempt to take financial advantage

2  of OBENSTINE, JAFARY breached a fiduciary duty to OBENSTINE.

3       88.    As a direct and proximate result of JAFARY's breaches of his fiduciary

4  duty, OBENSTINE has been damaged, and will continue to be damaged in the

5  future in an amount to proven at trial, but not less than $100 million.

6       89.    JAFARY's conduct in breaching his fiduciary duties owed to

7  OBENSTINE, as stated above, was willful and malicious, and done with the intent

8  to cause OBENSTINE harm. As such, OBENSTINE is entitled to an award of

9  punitive damages.

10

11                      **TWELFTH CAUSE OF ACTION**

12          **(FRAUD AGAINST REZA JAFARY AND DOES 1 TO 10)**

13       90.    PLAINTIFF hereby incorporates by reference, as though set forth in

14  full, each and all of the allegations set forth previously herein.

15       91.    JAFARY misrepresented material facts to OBENSTINE, committing:

16  (a) he would honor the sanctity of OBENSTINE's private, password protected email

17  account (b) he would give no persons access to the Account, (c) he would not

18  review any emails on the Account, (d) he recognized the Account's emails were

19  largely sacrosanct, attorney-client and work product exchanges, and included

20  OBENSTINE's own financial information, including his social security number, tax

21  returns, and financial statements, and (e) he and CRESTRIDGE would purge all of

22  OBENSTINE's emails from CRESTRIDGE's server to ensure the communications

23  were not transgressed upon. At the time JAFARY made the representations

24  described herein, he knew them to be false, and made the statements with the

25  specific purpose of inducing OBENSTINE's reliance.

26       92.    At the time JAFARY made the statements discussed herein, he knew

27  they were untrue. JAFARY, struggling financially, was desperate. And, he was

28  furious with OBENSTINE for his refusal to share fees obtained from the

1  Cosmopolitan Class Action. As such, JAFARY made the representations described

2  herein to induce OBENSTINE's reliance, and did so knowingly and fraudulently

3  induce OBENSTINE's reliance.

4      93.    OBENSTINE's reliance on JAFARY's statements was reasonable and

5  justified. As a direct result of JAFARY's acts described herein, OBENSTINE has

6  been damaged as described herein.

7      94.    JAFARY's conduct in breaching his fiduciary duties owed to

8  OBENSTINE, as stated above, was willful and malicious, and done with the intent

9  to cause OBENSTINE harm. As such, OBENSTINE is entitled to an award of

10  punitive damages.

11

12  ## THIRTEENTH CAUSE OF ACTION

13  ### (NEGLIGENT MISREPRESENTATION

14  ### AGAINST REZA JAFARY AND DOES 1 TO 10)

15      95.    PLAINTIFF hereby incorporates by reference, as though set forth in

16  full, each and all of the allegations set forth previously herein.

17      96.    Defendant JAFARY misrepresented and omitted material facts to

18  OBENSTINE in connection with the privacy of terms of use of the Account,

19  including the fact the electronic communications therein would be purged. JAFARY

20  misrepresented and omitted material facts to OBENSTINE regarding the subject

21  electronic communications as more particularly described herein.

22      97.    JAFARY knew, or was negligent in not knowing at the time, that his

23  representations to OBENSTINE described herein were false and/or misleading when

24  made. JAFARY had no reason to believe said representations were true at the time

25  they were made.

26      98.    As a result of JAFARY's negligent misrepresentations, OBENSTINE

27  has suffered substantial damages in an amount to be proven a trial, but not less than

28  $100 million.

1

2        **FOURTEENTH CAUSE OF ACTION**

3        **(NEGLIGENCE AGAINST ALL DEFENDANTS)**

4        99.    PLAINTIFF hereby incorporates by reference, as though set forth in

5    full, each and all of the allegations set forth previously herein.

6        100.   Defendants, and each of them, owed a duty of reasonable care to

7    OBENSTINE. At all times referenced herein, Defendants breached this duty by

8    invading OBENSTINE's private, password-protected email account. In doing those

9    acts described herein, Defendants were negligent as a matter of law.

10       101.   In doing those acts described herein, Defendants caused harm to

11   OBENSTINE in an amount to be proven a trial, but not less than $100 million.

12   Defendants' acts were a violation of the state and federal statutes described herein.

13

14       **PRAYER FOR RELIEF**

15       WHEREFORE, PLAINTIFF prays for judgment in his favor and against

16   DEFENDANTS as follows:

17       1.     As to causes of action numbers 1 through 14, damages in an amount to

18   be proven at trial, but no less than $100 million;

19       2.     As to causes of action numbers 1 through 7, and 9 through 12, treble

20   damages and punitive damages;

21       3.     As to causes of action numbers 1, 2, 4, 5, 6, 9 and 10, reasonable

22   attorneys' fees;

23       4.     As to causes of action 1 through 6 and 9 through 10, an order enjoining

24   Defendants, and each of them, from duplicating, accessing, reviewing, dispensing,

25   or in any other way using the ill-gotten emails discussed herein; an order that

26   Defendants return every copy, original, compilation, summary, and other tangible

27   things evidencing the emails at issue in any way;

28

5.     On all causes of action, interest and costs as allowed by law;

6.     For such further relief as may be deemed just and proper.

Dated: August 21, 2013          SAFARIAN & BAROIAN, LLP

By: _____
                Harry A. Safarian
Attorneys for
PLAINTIFF MARK OBENSTINE

## DEMAND FOR JURY TRIAL

Demand is hereby made by PLAINTIFF for a jury trial.

Dated: August 21, 2013          SAFARIAN & BAROIAN, LLP

By: _____
                Harry A. Safarian
Attorneys for
PLAINTIFF MARK OBENSTINE

31

COMPLAINT